RUSH MOORE LLP
A Limited Liability Law Partnership

SUSAN TIUS            2873-0
NATHANIEL A. HIGA     9064-0
737 Bishop Street, Suite 2400
Pacific Guardian Center, Mauka Tower
Honolulu, Hawaii 96813-3862
Telephone No.: (808) 521-0406
Facsimile No. (808) 521-0497
E-mail: Stius@rmhawaii.com

Attorneys for LCP - MAUI, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) Case No. 12-02052 |
| | ) (Chapter 7) |
| AMANDA D. TUCKER, | ) |
| | ) OBJECTION TO DEBTOR'S MOTION |
| Debtor. | ) TO CONVERT CHAPTER 7 CASE TO |
| | ) ANOTHER CHAPTER; DECLARATION |
| | ) OF JAKE MUTZ; EXHIBITS "A1" – |
| | ) "D8"; DECLARATION OF COUNSEL; |
| | ) EXHIBITS "E" – "G" |
| | ) |
| | ) Judge: Honorable Robert J. Faris |

## OBJECTION TO DEBTOR'S MOTION
## TO CONVERT CHAPTER 7 CASE TO ANOTHER CHAPTER

LCP - MAUI, LLC ("LCP"), a secured creditor of the Bankruptcy Estate of

AMANDA D. TUCKER ("Debtor"), the above-named Debtor, by and through its

attorneys, Rush Moore LLP A Limited Liability Law Partnership, hereby

respectfully submits this Objection to Debtor's Motion to Convert Chapter 7 Case to Another Chapter ("Motion to Convert") filed herein on December 13, 2012. The grounds of the Objection are that Debtor has engaged in conduct constituting bad faith and abuse of the bankruptcy process, causing her to forfeit the right under 11 U.S.C. § 706(a) to convert her case to Chapter 11.

## I.   BACKGROUND.

On October 17, 2012, Debtor filed a Voluntary Petition under Chapter 7 pursuant to Title 11 of the United States Code commencing the above-entitled case.  On October 19, 2012, Debtor filed an Amended Petition and DANE S. FIELD ("Trustee") was appointed Trustee in the case.

LCP is the current holder of Two Promissory Notes dated December 14, 2006, and evidencing debts owed by Debtor in the principal amounts of $3,115,000.00 ("First Note") and $720,000.00 ("Second Note") (collectively the "Notes").  *See* Exhibits A1 and A2.  The Notes were originally payable to the Bank of Lincolnwood.  *Id.*  Alonges to the Notes indorse the Notes to 2010-2 SFR Venture, LLC ("SFR"), and thereafter to LCP.  *Id.*  As security for the Notes, Debtor executed eight mortgages, dated December 15, 2006, and recorded in the State of Hawaii Bureau of Conveyances on January 18, 2007 (the "Mortgages").  *See* Exhibits B1 – B8.  The Mortgages evidence liens upon the following real properties:  2066-2074 Waikahe Place, Wailuku, Hawaii 96793; 43 Nonohe Place,

2

Paia, Hawaii 96779; 79 Ulumau Place, Paia, Hawaii 96779; 1543 Halama Street, Kihei, Hawaii 96753; 336 Front Street Lahaina, Hawaii 96761; 150-170 Kee Road, Makawao, Hawaii 96768; 341 Lani Place, Wailuku, Hawaii 96793; and 1291 Uluniu Road, Kihei, Hawaii 96753 (the "Properties"). *Id.* The Mortgages were similarly originally executed in favor of the Bank of Lincolnwood, but were subsequently assigned to SFR on November 4, 2011. *See* Exhibits C1 – C8. Thereafter, the Mortgages were assigned from SFR to LCP on October 31, 2012. *See* Exhibits D1 – D8. LCP is owed amounts in excess of $4,650,496.52 on the Notes and the Mortgages ($3,787,274.31 on the First Note and $863,222.21 on the Second Note). This amount includes interest, fees, costs, and late charges as of August 22, 2012, but does not include default interest and other allowable charges.[1]

The Mortgages encumber collateral including the Properties and all rents and proceeds associated with the Properties. The Mortgages provide that the collateral includes "[a]ll rents, issues, profits, royalties, avails, income and other benefits derived or owned by Mortgagor directly or indirectly from the Real Estate or the Improvements." Exs. B1 – B8 at ¶ E.v.

---

[1] The figures as of August 22, 2012, are those submitted in SFR's Motion for Summary Judgment and Interlocutory Decree of Foreclosure discussed *infra*. LCP contends that it is entitled to additional amounts, including but not limited to default interest and other charges.

3

Prior to Debtor filing this bankruptcy case, Debtor was about to lose the Properties to foreclosure. SFR, LCP's predecessor in interest to the Notes and Mortgage, filed a Complaint for Foreclosure against the Debtor on May 4, 2012. Exhibit E. On September 21, 2012, SFR filed its Motion for Summary Judgment and for Interlocutory Decree of Foreclosure.[2] Exhibit F. The Motion was set for hearing on October 18, 2012 at 8:15 a.m. before the Honorable Judge Rhonda Loo. *Id.* On October 17, 2012, Debtor filed her Chapter 7 Petition for Bankruptcy protection. *See* Docket. The only creditors listed in Debtor's schedules are SFR, LCP's predecessor in interest, the Internal Revenue Service, and the Department of Taxation of the State of Hawaii. *See* Docket.

## II. <u>LEGAL STANDARD.</u>

Conversion from Chapter 7 to Chapter 11 is governed by 11 U.S.C. § 706(a), which states that a debtor "may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time" as long as the case has not been converted before. However, a debtor does not have a completely absolute right to convert. Bad faith on the part of the debtor will preclude a conversion under Section 706(a). *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367-68, 374-75 (2007) (holding that a "bad faith" debtor's motion to convert may be

---

[2] Debtor, in her opposition to the motion for summary judgment, did not deny that she had executed the Notes and the Mortgages, nor did she deny defaulting on the payments due thereunder. Exhibit G.

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed 12/27/12   Page 4 of 12

denied when made, avoiding the "procedural anomaly" of allowing an absolute

right to convert even though the case will be "immediately returned to Chapter

7.").[3]  In the context of a motion to convert a Chapter 7 case to Chapter 11, "the

Court may deny a motion to convert to Chapter 11 if objecting creditors establish

'cause' as described by § 1112(b)(4)." *In re 10 Bears at Chiloquin, Inc.*, 2007

Bankr. LEXIS 1997, *8 (Bankr. D. Or. June 6, 2007).  While bad faith depends on

an "amalgam of factors," the test is "whether a debtor is attempting to

unreasonably deter and harass creditors or attempting to effect a speedy, efficient

reorganization on a feasible basis." *Id.* at *7.[4]  "Once at issue, the burden falls

upon the bankruptcy petitioner to establish that the petition has been filed in 'good

faith.'"  *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999) (citing *In

re Fox*, 232 B.R. 229, 233 (Bankr. D. Kan. 1999); *Stage I Land Co. v. United

States*, 71 B.R. 225, 229 (D. Minn. 1986)).

Bad faith that would constitute cause to refuse conversion to a Chapter 11

case includes:

---

[3] The United States Supreme Court in *Marrama* held that, considering that the goal of the
bankruptcy court is to prevent people from abusing the bankruptcy process, the court can deny
conversion under the "inherent power" of federal courts to prevent an "abuse of process" or
"abusive litigation practices."  549 U.S. 365, 375-76 (2007).  *Marrama* clearly applies to
conversions from Chapter 7 to Chapter 11.  *In re Levesque*, 473 B.R. 331, 339 (B.A.P. 9th Cir.
2012) ("[T]he language of § 706(a) applies the same whether the chosen chapter for conversion
is chapter 11 or chapter 13.  Consequently, there is no dispute between the parties as to the
application of § 706(a), as interpreted by *Marrama*.").

[4] In *10 Bears*, the Court denied conversion to a Chapter 11 case because of "gross
mismanagement of the estate . . . [and] of the debtor's affairs pre-petition."  *Id.* at *8.

5

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
> . . .
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> . . .
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter [11 USCS §§ 1101 et seq.];

11 U.S.C. § 1112(b)(4). The factors outlined in Section 1112(b) seek to impose "limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). One such prohibited objective is the filing of a bankruptcy case in which "the petition is merely a 'litigating tactic'" in some ancillary legal proceeding. *Id.* Generally, a debtor is guilty of bad faith if

> (1) The debtor has only one asset. (2) The secured creditors' lien encumbers that asset. (3) There are generally no employees except for the principals. (4) There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments. (5) There are few, if any, unsecured creditors whose claims are relatively small. (6) There are allegations of wrongdoing by the debtor or its principals. (7) The debtor is afflicted with the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors. (8) Bankruptcy offers the only possibility of forestalling loss of the property.

6

*In re Stolrows, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988).

## III.   <u>ARGUMENT.</u>

Debtor has clearly attempted to utilize the Bankruptcy process to forestall the foreclosure of the Properties.  Debtor's actions constitute a "litigation tactic" "outside the legitimate scope of the bankruptcy laws."  *In re Marsch*, 36 F.3d at 828.  Therefore, Debtor cannot meet the requirement of good faith under Section 1112(b) and the Motion to Convert should be denied.

### A.   **Debtor's Petition Meets the Classic Criteria for a Bad Faith Filing.**

The facts surrounding Debtor's bankruptcy petition show that she is seeking to hamper creditors rather than attempting to reorganize.  *In re 10 Bears at Chiloquin, Inc.*, 2007 Bankr. LEXIS 1997 at *8.  First, Debtor's only major assets are the Properties that were mortgaged to secure the Notes.  According to Debtor's Schedules, the Properties amount to $5,454,000 of her total $5,495,900 in assets, or roughly 99.2%.  Second, LCP is a secured creditor whose liens encumber the Properties.  Third, according to Debtor's schedules, the Properties are her only significant source of income and they generate roughly $20,000 per month.  However, the payments on the Notes and Mortgages alone amount to more than $30,000 per month.  Declaration of Jake Mutz, ¶ 28.  As such, Debtor clearly has insufficient income to sustain a plan of reorganization or make adequate protection

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed 12/27/12   Page 7 of 12

payments.  Fourth, there are only two other unsecured creditors listed on Debtor's Schedules:  The Internal Revenue Service and the State of Hawaii, Department of Taxation.  No amount is listed for these unsecured creditors' claims.  Fifth, Debtor has defaulted on her obligations under the Notes and Mortgages despite continuing to operate her business of renting out the real properties and collecting said rents. As more fully discussed *infra*, the rents are required to be turned over to the Trustee, but Debtor has failed and refused to do so.  Sixth and finally, Debtor's filing on the day before her creditor's motion seeking foreclosure of the Properties was to be heard is indicative of Debtor's motive to hamper her creditor's efforts to collect its debts against the secured collateral.

Cause to dismiss a Chapter 11 case is appropriate where it was filed "solely to frustrate or delay a secured creditor's right to foreclose on the debtor's single real estate asset."  *In re MV Pipeline Co.*, 2007 WL 1452591, *12 (Bankr. E.D. Okla. May 15, 2007 (citing *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414 (10th Cir. 1996; *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734 (6th Cir. 1994).[5]  In this case, Debtor is clearly seeking to continue her business of collecting $20,000 per month in rents

---

[5] While Debtor did not originally file her petition as a Chapter 11, and through she technically owns eight parcels of real property, this matter closely resembles a single asset real estate bankruptcy.  Debtor has no other significant assets other than the Properties.  The Properties are all security for the same debts held by the same creditor.  Moreover, cases dismissing single asset filings do so under Section 1112(b), the same bankruptcy code section applicable in the context of a motion to convert to a Chapter 11.

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed 12/27/12   Page 8 of 12

without fulfilling her obligations under the Notes and Mortgages. Moreover she has blocked her creditor's ability to hold her accountable for her failures by filing her bankruptcy petition. Debtor's use of the Bankruptcy process to practice such a scheme is the very heart of bad faith.[6]

### B. Debtor's Failure to Turn Over Rents to the Trustee Constitutes Bad Faith.

Debtor has failed to turn over cash collateral to the Trustee despite the Trustee's demands, has interfered with the Trustee's efforts to collect the cash collateral, has concealed the cash collateral, and has used the cash collateral without the consent of its secured creditor. Proceeds, products, offspring, rents, or profits of property in which an entity has a security interest are defined as "cash collateral" under Section 363(a). Section 552(b) provides that a security interest in

---

[6] Courts considering circumstances similar to this one have dismissed Chapter 11 cases for bad faith. *In re Syndor*, 2010 WL 2428655, *9 (Bankr. D. Md. June 11, 2010) (finding bad faith in single asset foreclosure petition); *In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81, 85-86 (Bankr. S.D. Ga. 2009) (dismissing single asset foreclosure case); *In re Global Ship Sys., LLC*, 391 B.R. 193, 202-04 (Bankr. S.D. Ga. 2007) (dismissing petition of single asset debtor for bad faith to stall foreclosure); *In re State Street Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003) *affirmed* 356 F.3d 1345 (affirming dismissal in single asset foreclosure case); *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1307 (2d Cir. 1997) (dismissing single asset case filed to frustrate creditors collection efforts); *In re SB Properties*, Inc., 185 B.R. 198, 205 (E.D. Pa. 1995) (affirming dismissal of Chapter 11 filing to forestall foreclosure where debtor was a single asset debtor with no assets other than some rental income, no employees to protect, no on-going business to preserve, and no significant creditors other than a mortgagee); *In re Gateway North Estates, Inc.*, 165 B.R. 427, 429 (E.D. Mich. 1994) (dismissing the case and finding that the "Debtor is merely trying to forestall the foreclosure proceedings" in a manner "inconsistent with the underlying purpose of Chapter 11 protection" where "the bankruptcy petition [was filed] just five days before the Florida foreclosure sale"); *In re Krilich*, 87 B.R. 178, 183 (Bankr. M.D. Fla. 1988) (granting dismissal in foreclosure of shopping center); *In re Randy Homes Corp.*, 86 B.R. 259, 260-61 (Bankr. M.D. Fla. 1988) (affirming dismissal of single asset entity's case to stall foreclosure).

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed 12/27/12   Page 9 of 12

rents continues in post-petition rents. Section 363(c)(2) provides that the trustee or debtor in possession may not use, sell or lease cash collateral without either (1) the consent of the creditor with an interest in the collateral or (2) court authorization, granted after notice and a hearing. In the absence of the creditor's consent, the trustee may use cash collateral only with the approval of the court, which requires adequate protection of the adverse interest.[7] This strict prohibition on use of cash collateral does not require any action by the creditor, such as demanding the collateral not be used.

Rents are property of the Estate under section 541(a)(1) and 704(a)(1) which a Chapter 7 Trustee has authority upon commencement of the chapter 7 case. Despite the requests of the Trustee, Debtor has failed and refused to turn over the cash collateral in the form of post-petition rents collected from the Properties subject to the Mortgages. Debtor's wrongful conduct regarding the cash collateral is an abuse of the bankruptcy process.[8]

Moreover, while LCP anticipates entering into a cash collateral agreement with the Chapter 7 Trustee, if the case is converted to Chapter 11, LCP would not

---

[7] Adequate protection of a lender's interest might appropriately include a lien on other assets to the extent, if any, of a decrease in the value of the lender's collateral, including the cash collateral.

[8] As a matter separate from the Court's consideration of the Debtor's Motion to Convert, the Court must treat Debtor's unauthorized use of cash collateral as a significant offense not to be condoned. The best compensatory remedy would be to require the debtor to replace the cash promptly.

10

expect to enter into any agreement with Debtor, who has intentionally violated bankruptcy law, including interfering with the Trustee's performance of his duties, at the expense of the LCP's rights in the cash collateral. Debtor's actions are "abusive litigation practices" that should not be condoned by this court. *Marrama*, 549 U.S. at 375-76.

### C.      Debtor has Failed to Make Required Disclosures Under Bankruptcy Law.

Despite having filed her bankruptcy petition, Debtor has not provided complete information, nor has she filed the appropriate disclosures under the law. First, Debtor's Schedule G clearly indicates that there are expenses associated with the operations of Debtor's rentals of the real properties. Having filed the petition mid-month, Debtor would have had creditors associated with those expenses; however, none were disclosed. Second, the creditors that were disclosed in Debtor's Schedule E, federal and state taxing authorities, had no amounts listed for their respective claims and "unknown" listed as the date the claim was incurred. Third, Section 521(a)(2) requires that if an individual debtor's "schedule of assets and liabilities" lists debts secured by property of the estate, the debtor must file a statement of an intention to retain or surrender that property. Debtor must provide that statement of intention with regard to that property. The statement of intention must be filed within 30 days after the filing of the chapter 7 petition or on or before

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed  12/27/12   Page 11 of 12

the date of the meeting of the creditors, whichever is earlier. 11 U.S.C. §
521(a)(2)(A). Debtor did not file a statement of intention. Debtor's failure in her
sworn schedules to truthfully disclose her liabilities while receiving the benefits of
the automatic stay are indicative of bad faith.

## IV. CONCLUSION.

Debtor's conduct shows an abusive scheme to enjoy the benefits of the
automatic stay while using the time afforded by the stay to collect post-petition
rents, pay her attorney to continue litigation, and receive a discharge. Debtor's
actions constitute bad faith under 11 U.S.C. § 1112. Debtor's Motion to Convert
should be denied.

DATED:      Honolulu, Hawaii, December 27, 2012.


/s/ Susan Tius
SUSAN TIUS
NATHANIEL A. HIGA
Attorneys for LCP - MAUI, LLC

U.S. Bankruptcy Court - Hawaii   #12-02052   Dkt # 49   Filed 12/27/12   Page 12 of 12